UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW JAMES JORDAN, SR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:24-cv-00734-SRC |
| DET. WATSON et al., | ) ) ) |
| Defendants. | ) ) |

### Memorandum and Order

Andrew James Jordan, Sr. sues Arnold police officer unknown Watson, the Arnold Police Department, and the "Jefferson County Police Department." Doc. 1. Jordan alleges excessive force and false imprisonment regarding his November 2021 arrest. *See id.* The Court has already granted Jordan leave to proceed in forma pauperis, doc.10, and Jordan has timely paid his initial partial filing fee, doc. 12. Now, on initial review under 28 U.S.C. § 1915(e), the Court directs the Clerk of Court to effect service of process on Watson in his individual capacity but dismisses the remaining defendants from this case.

**I.   Background**

Jordan alleges the following facts. On November 30, 2021, Watson arrested Jordan at a Home Depot store located in Arnold, Missouri. Doc. 1 at 4.[1] While Jordan's hands were behind his back, Watson repeatedly smashed Jordan's head against a patrol car, causing over $2,000 in damages to the car. *Id.* at 4. Next, Watson threw Jordan to the ground, and while Jordan was face down with his hands behind his back (but not handcuffed), Watson threatened to let the police K9 loose on him. *Id.* at 5.

---

[1] The Court cites to page numbers as assigned by CM/ECF.

After arrest, Jordan was taken to the Arnold Police Department based on outstanding warrants. *Id.* He was then transferred to the Jefferson County Jail but eventually released on his own recognizance. *Id.* Approximately one or two months later, warrants were issued against Jordan on charges of first-degree property damage (due to the damage to the patrol car) and resisting arrest. *Id.* At some point, Jordan was taken into custody and held at the Jefferson County Jail for eleven months without bond. *Id.* at 6. A few days before Jordan's trial on these charges was scheduled to begin, a witness came forward to the public defender's office to make a statement and provide "video footage of cop lying about everything." *Id.* It is unclear if the "cop" Jordan is referring to is Watson. After the state caught wind of this evidence, the state dismissed all charges against Jordan. *Id.*

Jordan brings this civil action under 42 U.S.C. § 1983 against Watson, in his individual capacity, and the Arnold and Jefferson County police departments. *Id.* at 2–4. Against Watson, Jordan asserts claims of excessive force and intentional infliction of emotional distress based on the Fourth, Fifth, Eighth, and Fourteenth Amendments. *Id.* at 8. As to the Arnold Police Department, Jordan states that he never received any paperwork upon arrest, and therefore, he did not know what he was being charged with. *Id.* He also asserts that the Arnold Police Department violated his Fourteenth Amendment due-process and equal-protection rights when it did not acquire video footage of the Home Depot parking lot for the time and day of the alleged excessive-force incident, because the department was "obviously trying to hide something." *Id.* Finally, as to the "Jefferson County Police Department,"[2] Jordan brings claims of false imprisonment, wrongful incarceration, and wrongful denial of bail based on the eleven months

---

[2] Jefferson County does not have a "police department." Thus, the Court construes this as a claim against the Jefferson County Sherriff's Office.

2

that he was held in the Jefferson County Jail before the charges against him were dismissed. *Id.* at 7–8.

As a result of this incident, Jordan suffered several abrasions on his body and knots on his head. *Id.* at 5. Jordan also experienced nightmares, "fear of authority figures," mental and emotional anguish, and loss of time with his loved ones. *Id.* at 5. For relief, Jordan seeks money damages. *Id.* at 9.

## II. Standard

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented person's complaint under section 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per

3

curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  The Court need not assume unalleged facts.  *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).  Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### III.  Discussion

Section 1983 provides a cause of action for persons who suffer violations of their constitutional or statutory rights at the hands of state officers.  It says that, subject to some qualifications:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim under section 1983, a plaintiff must establish:  (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that a person acting under color of state law committed the violation.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Jordan asserts section 1983 claims against the Arnold Police Department, the Jefferson County Sheriff's Office, and Watson.  Doc. 1 at 4–8.  The Court discusses each in turn.

4

    **A.**    **Claims against municipalities**

Plaintiffs cannot hold police departments liable under section 1983 because the departments are subdivisions of their municipal governments. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). Thus, the Court construes Jordan's complaint as an attempt to impose liability directly on the municipal governments: the City of Arnold and Jefferson County.

In general, plaintiffs cannot hold municipal governments liable under section 1983. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997). The Supreme Court recognized an exception to this rule in *Monell v. Dep't. of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978). In *Monell*, the Supreme Court held that a municipality or local governing body can be directly liable under section 1983 in some circumstances. *See* 436 U.S. at 690. Such liability may attach if the constitutional violation "resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

    **1.**    **Claims against the City of Arnold**

Jordan alleges that the Arnold Police Department did not provide him with proper arrest paperwork and that it did not gather proper videotape evidence of Watson's use of excessive force. *See* doc. 1 at 8. These allegations fail to state a *Monell* claim against the City of Arnold because they do not show that the police department violated any of Watson's rights "secured by the Constitution [or] laws" of the United States. 42 U.S.C. § 1983; *see West*, 487 U.S. at 48.

The Court finds no caselaw or otherwise to support the premise that the failure to provide certain paperwork during an arrest renders the arrest unlawful. *See Virginia v. Moore*, 553 U.S. 164, 177 (2008) (equating "a lawful arrest" with "an arrest based on probable cause" (citations omitted)). And the Court finds no more support for the argument that failure to gather complete video evidence during an arrest, or even during an unlawful seizure, amounts to an independent violation of the Constitution or other federal law. *See Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969) (agreeing that a "factually correct" police report "has not yet achieved the status of the federally constituted constitutional right"). Thus, Jordan fails to allege a violation of rights secured by section 1983. The Court dismisses the claims against the City of Arnold for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.     **Claims against Jefferson County**

Jordan argues that the Jefferson County Sherriff's Office falsely imprisoned him and wrongfully incarcerated him. Doc. 1 at 8. He also argues that his right to a "reasonable bond" was violated. *Id.* Jordan alleges that he was confined in the Jefferson County Jail for eleven months, without bond, awaiting trial before the State dismissed all the charges against him. *Id.* at 6. The Court construes Jordan's allegations as asserting two claims: one for unlawful detention and one for the denial of reasonable bail. As with his claims against the City of Arnold, Jordan fails to adequately allege a constitutional violation that can give rise to municipal liability under section 1983.

#### a.     **Unlawful detention**

Jordan contends that he was "held [the] whole time illegally" because the State did not have sufficient evidence to support his detention. *See* doc. 1 at 6–7. The Court construes Jordan's allegation to mean that the State failed to support his detention with probable cause, from the time he was first detained through the time the charges against him were dismissed.

6

"[T]he Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet.*, 580 U.S. 357, 369 (2017). And before a plaintiff can hold a municipality liable for unlawful pretrial detention, the plaintiff must allege that a municipal employee committed an unconstitutional act. *Jones v. City of St. Louis*, 104 F.4th 1043, 1051 (8th Cir. 2024). To allege that a municipal employee violated the Fourth Amendment right to be free from unlawful detention, a plaintiff must plausibly allege that an employee was "personally involved" and "knew of [the plaintiff's] prolonged detention." *Id.* at 1049.

Here, Jordan alleges no such thing. He alleges that he "was taken into . . . jail" and "was confined" in the Jefferson County Jail for eleven months without bond. *See* doc. 1 at 6. But nowhere does Jordan indicate who did the "tak[ing]" or the "confin[ing]." *See generally* doc. 1. Jordan doesn't allege that Watson did it, and the complaint indicates that the detention didn't take place until one or two months after the incident involving Watson. Doc. 1 at 5. And, while Jordan alleges that video footage existed of a "cop lying about everything," doc. 1 at 6, he fails to allege that the unnamed "cop" (or any other municipal employee) was "personally involved" in Jordan's prolonged pretrial detention, *Jones*, 104 F.4th at 1051.

The *Jones* plaintiff—the dismissal of whose complaint the Eighth Circuit affirmed—made allegations far stronger than the allegations that Jordan makes here. Jones alleged that specific defendants "kept Plaintiff incarcerated in St. Louis before and after Plaintiff's charges were dismissed." *Jones*, 104 F.4th at 1049. The Eighth Circuit held that this allegation and others failed to state a Fourth Amendment claim because "there [was] no factual support for the allegation defendants knew of Jones's prolonged detention, and the allegation they 'should have known that Plaintiff was incarcerated despite his charges being dismissed' [was] an allegation of negligence that fail[ed] to state Fourth Amendment or due[-]process claims." *Id.* So too here.

7

Thus, Jordan fails to allege unlawful detention against Jefferson County, and the Court dismisses the claim. *See id.*

### b. Denial of reasonable bail

The Eighth Amendment says, in its entirety: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The amendment "obligates judges passing upon the right to bail to deny such relief only for the strongest of reasons." *Harris v. United States*, 404 U.S. 1232, 1232 (1971) (citation omitted). But, to state a claim against a municipality for unconstitutional denial of bail, a plaintiff must allege that the defendant denied the plaintiff bail. *See Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (holding that the district court "properly dismissed" an excessive-bail section 1983 claim "because none of the defendants set [the plaintiff's] bail").

Here, Jordan fails to allege that any Jefferson County official denied Jordan bail. *See* doc. 1 at 8. He merely alleges that the conduct of county officials implicated his "right to [a] fair and reasonable bond." *Id.* Thus, Jordan fails to allege an excessive-bail violation. *See Kohl*, 5 F.3d at 1149.

Accordingly, the Court dismisses Jordan's claims against Jefferson County for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Claims against Watson

### 1. Excessive-force claim

Jordan does not allege that he was a convicted and sentenced prisoner at the time of his arrest, *see* doc. 1, so the Court construes Jordan's excessive-force claim under the Fourth Amendment, *see, e.g.*, *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Shelton v. Stevens*, 964 F.3d 747, 750–52 (8th Cir. 2020) (analyzing the plaintiff's excessive-force claim, resulting from

injuries sustained during his arrest, under the Fourth Amendment). The Court finds that Jordan's claim survives section 1915 review.

"The Fourth Amendment protects citizens from being seized through excessive force by law[-]enforcement officers." *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999)); *see also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person," (citation omitted)); *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise[] in the context of an arrest or investigatory stop of a free citizen.'" (alteration in original) (quoting *Graham*, 490 U.S. at 394)). The violation of this right suffices to support an action under section 1983. *See, e.g.*, *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).

"When evaluating a Fourth Amendment excessive[-]force claim under [section] 1983," a court must "consider 'whether the amount of force used was objectively reasonable under the particular circumstances.'" *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (quoting *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018)). "This evaluation" requires that a court must carefully consider "the case's particular facts and circumstances, including: '(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Michael*, 899 F.3d at 532). Courts "may also consider the result of the use of force." *Id.* (citing *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)). Moreover, the Eighth Circuit has "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against the person." *Watkins v.*

9

*City of St. Louis*, 102 F.4th 947, 952 (8th Cir. 2024) (quoting *Mirchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022)).

Here, Jordan alleges that, when Watson was arresting him, Jordan put his arms behind his back and never tried to pull away. *See* doc. 1 at 4–5. Despite this submission, Jordan alleges that Watson smashed Jordan's head into the patrol car repeatedly and threw him to the ground. *See id.* Jordan suffered multiple abrasions to his head and body. *Id.* at 5. In addition, none of the facts alleged indicate that Jordan posed an immediate threat to Watson. *See generally* doc. 1. Nor do they suggest that Jordan was actively resisting arrest or attempting to evade arrest by flight. *See generally id.* Finally, Jordan alleges that he suffered injuries as a result of this incident. *See id.* at 5.

Liberally construing these allegations, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court finds Jordan's complaint sufficient to survive initial review on his excessive-force claim against Watson in his individual capacity. *See Watkins v. City of St. Louis*, 102 F.4th 947, 952 (8th Cir. 2024) ("[W]e have held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against [the person]" (second alteration in original) (quoting *Mitchell*, 28 F.4th at 898)).

### 2. Intention-infliction-of-emotional-distress claim

Jordan also asserts a claim of intentional infliction of emotional distress against Watson in his individual capacity. Doc. 1 at 8. "In Missouri, to state a claim of intentional infliction of emotional distress, a plaintiff must plead: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321

(Mo. Ct. App. 2010) (citations omitted).  As explained below, Jordan has failed to allege the first element.

"Intentional infliction of emotional distress requires not only intentional conduct[] but conduct that is intended only to cause severe emotional harm."  *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (citation omitted).  To state an intentional-infliction-of-emotional-distress claim, the plaintiff must allege that the defendant's "sole purpose in [his] conduct was to invade the [plaintiff's] interest in freedom from emotional distress."  *Id.* (citation omitted).  "Therefore, where the conduct was intended to invade other legally protected interests of the plaintiff or to cause bodily harm, a claim for intentional infliction of emotional distress will not lie." *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. App. 1998) (citation omitted).

Here, Jordan's allegations of Watson's brutal treatment, at most, show that Watson "intended to invade other legally protected interests of [Jordan] or to cause bodily harm," *id.* (citation omitted), not that Watson "intended only to cause severe emotional harm," *Gibson*, 952 S.W.2d at 249 (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996)).  Indeed, Jordan fails to allege that Watson at all intended to cause him emotional distress.  *See generally* doc. 1.  Thus, Jordan fails to state a claim for intentional infliction of emotional distress, *see Diehl*, 309 S.W.3d at 321, and the Court dismisses the claim, *see* 28 U.S.C. § 1915(e)(2)(B)(ii).

IV.     **Motion for Appointment of Counsel**

Finally, Jordan has filed a motion for appointment of counsel.  Doc. 3.  Jordan states that he has made diligent efforts to find counsel to represent him but that he has been unsuccessful, at least in part due to his indigent status.  *Id.*  A few months later, Jordan moved for appointment of counsel again.  Doc. 14.

In civil cases, a self-represented litigant does not have a "constitutional or statutory right to appointed counsel." *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (citation omitted); *see*

11

*also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) ("A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case," (citation omitted)).  Rather, a district court may appoint counsel "if convinced that an indigent plaintiff has stated a non-frivolous claim," *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citation omitted), and where "the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel," *id.* (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)).

When determining to appoint counsel, a court considers relevant factors, such as "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citation omitted).  Also, in a civil matter, the appointment of counsel for an indigent plaintiff lies within the discretion of the Court.  *Id.*  (citing *Williams v. Carter*, 10 F.3d 563, 566 (8th Cir. 1993)).

The Court finds that appointment of counsel is not warranted at this time.  This action appears to involve straightforward questions of fact rather than complex questions of law.  Moreover, the Court only now instructs the Clerk of Court to effect service of process on Watson, and, to date, the Court has not issued a case-management order.  For these reasons, the Court denies Jordan's motions for appointment of counsel without prejudice.

**V.     Conclusion**

For the reasons outlined above, the Court directs the Clerk of Court to effect service of process on Arnold police officer Unknown Watson in his individual capacity, on Jordan's section 1983 claim of excessive force.  The Court dismisses, without prejudice, the remaining claims and

the remaining defendants.  And the Court denies Jordan's [3, 14] Motion for Appointment of Counsel.  A separate order of partial dismissal accompanies this Memorandum and Order.

So ordered this 18th day of March 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

13