IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

ANDREW JAMES JORDAN, SR., )
)
    *Plaintiff*, )
)
v. )
) No. 4:24-cv-00734-JMD
TODD WATSON, )
)
    *Defendant*. )
)
)

## MEMORANDUM AND ORDER GRANTING WATSON'S MOTION FOR SUMMARY JUDGMENT

Andrew Jordan—a known car thief with active felony warrants—repeatedly resisted Detective Todd Watson's attempts to arrest him. After Jordan refused to put his hands behind his back, Detective Watson pushed him to the ground to handcuff him. Jordan filed a civil rights complaint under 42 U.S.C. § 1983, but the Court dismissed nearly all his claims in a previous order. His only surviving claim is against Detective Watson for excessive force. Detective Watson moved for summary judgment.

Detective Watson used reasonable force to arrest Jordan, so qualified immunity shields him from liability. "Our Fourth amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). In fact, an officer "must be permitted to grab the arrestee and put him in handcuffs when effectuating an arrest." *Kasiah v. Crowd Sys., Inc.*, 915 F.3d 1179, 1184 (8th Cir. 2019). Just so here.

The Court will not "indulge in armchair quarterbacking or exploit the benefits of hindsight" in reviewing an officer's use of force. *Gardner v. Buerger*, 82 F.3d 248, 251 (8th

1

Cir. 1996). Carrying out a lawful arrest, Detective Watson tackled a noncompliant, argumentative person in possession of a possible weapon (later identified as a 12-inch screwdriver) and who had several active warrants. He employed a constitutionally reasonable amount of force and did not otherwise violate any of Jordan's clearly established constitutional rights. The Court grants Detective Watson's motion for summary judgment, ECF 37.

**Background**

After Detective Watson moved for summary judgment, Jordan failed to respond directly to Watson's statement of uncontested material facts. Although Jordan included two filings that can be construed to contradict some of Watson's factual statements, he left many of Watson's factual assertions unaddressed. The Court thus considers those facts "undisputed for purposes of the [summary judgment] motion." Fed. R. Civ. P. 56(e); *see also* Local Rule 4.01(E) (requiring respondents opposing summary judgment to file "a document titled Response to Statement of Material Facts"). Jordan, as a *pro se* litigant, is afforded some leeway to the extent a filing is ambiguous or not fully developed, but "[e]ven pro se litigants must comply with court rules and directives." *Soliman v. Johanns,* 412 F.3d 920, 922 (8th Cir. 2005). His decision not to contest most of Watson's factual assertions means those assertions are undisputed.

To the extent Jordan has opposed Watson's statement of facts (if at all), the Court adopts "the plaintiff's version of the facts" except where "a videotape capturing the events" at issue "utterly discredit[s]" the plaintiff's factual allegations. *Scott v. Harris*, 550 U.S. 372, 378, 380–81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment."). Here, Detective Watson's body camera documented the entire interaction and arrest.

During his patrol on November 30, 2021, Detective Watson recognized Jordan in a Home Depot parking lot. He knew that Jordan was wanted on an active felony warrant for stealing a motor vehicle as well as for several traffic warrants. Detective Watson ordered Jordan to "come here" three times, reminded him of his felony warrant—to which Jordan responded, "I know"—and told Jordan at least four times to "turn around" and "put [his] hands behind [his] back." ECF 39-1. Jordan refused to comply, instead arguing "I didn't do nothing dude," "listen stop man," "there's no probable cause here," and "you're not listening to me, stop." *Id.*

The officer grabbed Jordan to arrest him. He felt a "large metal object inside of the lining of [Jordan's] coat" and "fear[ed] it was a weapon." ECF 39-2 at 2. In the ensuing struggle, Jordan collided with the police vehicle before Detective Watson tackled him to the ground. (The parties dispute whether Jordan fell into the vehicle or was pushed into it.) Jordan continued to ignore the officer's commands and continued to yell. Despite the officer restating his order for Jordan to put his hands behind his back multiple times, Jordan instead reached out his hand to grab a pen from the parking lot ground. Detective Watson secured Jordan in handcuffs and took him into custody. The entire arrest interaction lasted about 60 seconds.

Years later, in May 2024, Jordan filed this lawsuit. He brought a range of claims—excessive force, intentional infliction of emotional distress, false imprisonment, and wrongful denial of bail, among others—against Detective Watson as well as against the Arnold and Jefferson County police departments. On March 18, 2025, the Court dismissed each of Jordan's claims except his claim under the Fourth Amendment against Detective Watson for excessive force. At that early stage of frivolity review, 28 U.S.C. § 1915(e), the Court credited

3

Jordan's allegations that he "put his arms behind his back and never tried to pull away" while "pos[ing] [no] immediate threat to [Detective] Watson," ECF 15 at 10, and yet had his head "smashed" into the patrol car "repeatedly" by Detective Watson and was "suplexed" to the ground, ECF 1 at 5. The Court also accepted Jordan's statement that he "suffered injuries as a result of this incident." ECF 15 at 10. "Liberally construing these allegations," the Court found his complaint "sufficient to survive initial review." *Id.*

Detective Watson denied Jordan's allegations and stated that qualified immunity bars the excessive force claim. He moved for summary judgment.

## Analysis

Detective Watson's use of force did not violate Jordan's clearly established Fourth Amendment rights, so he is entitled to qualified immunity and therefore summary judgment. The Court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (mandating "the entry of summary judgment" when there is "a complete failure of proof concerning an essential element of the [nonmovant's] case"). Jordan completely fails to prove that the officer used excessive force.

At bottom, Jordan must overcome Detective Watson's qualified immunity defense. He cannot. A government official is entitled to qualified immunity unless (1) he "violated" a plaintiff's "constitutional right" (2) that "was clearly established at the time of [the official's] alleged misconduct." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (cleaned up). Jordan's case falters on both prongs.

As to the first, Detective Watson did not violate Jordan's constitutional rights. Jordan alleges that the officer hit Jordan's head against the patrol car and tackled him to the ground. He contends that these actions constituted excessive force, which the Fourth Amendment

4

prohibits. *See Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2018) ("The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." (citation omitted)). But Jordan cannot satisfy the test for excessive force.

To establish a Fourth Amendment violation for excessive force, the Court must determine whether the officer's action was "objectively reasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397 (cleaned up). The Court gives "careful attention" to three factors identified by the Supreme Court: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of officers or others," and (3) "whether he is actively resisting arrest." *Id.* at 396. "Police officers have tough jobs," *Gardner*, 82 F.3d at 252, so the Court recognizes that they "are often forced to make split-second judgments" under "tense, uncertain and rapidly evolving" circumstances, *Graham*, 490 U.S. at 396–97.

Reviewing the three *Graham* factors, and "judg[ing] from the perspective of a reasonable officer on the scene"—rather than with "the 20/20 vision of hindsight"—the Court concludes that Detective Watson's actions were constitutionally adequate. *Id.* at 396. First, Jordan had an active felony warrant for stealing a motor vehicle along with several outstanding traffic warrants. Second, despite repeated warnings, Jordan refused to comply with Detective Watson's clear commands and struggled against attempts to handcuff him. Detective Watson also felt a large possible weapon in Jordan's coat, seeing it as a potential threat. Third, the body camera footage leaves no doubt that Jordan resisted arrest. He repeatedly argued with Detective Watson and ignored commands to put his hands behind his back. While on the ground, Jordan reached for a pen instead of complying with the officer's orders. *Cf. Sterusky v. Cooper*, No. 24-5820, 2025 WL 2058797, at *5 (6th Cir. July 23, 2025) ("Sterusky could have posed a significant threat to Officer Cooper's safety by using a non-

5

traditional weapon (such as a pen)."); *Washington v. Barragan*, 9 P.3d 942, 947 (Wash. App. Div. 3 2000) ("[A] reasonable trier of fact could have found that the pencil, as wielded by Mr. Barragan, constituted a deadly weapon."). Detective Watson's use of force was objectively reasonable when facing a known felon with an active felony warrant who posed a potential threat to the officer's safety and who repeatedly resisted arrest.

Jordan also fails to submit evidence of major injuries. Jordan claims that he suffered "abrasions on body," "knots on head," and a few non-physical injuries like "fear of authority figures." ECF 1 at 5. But at the summary-judgment stage, he cannot rely on allegations alone. Jordan provides no medical records or other objective evidence to substantiate any claims of major injuries despite his obligation to "respond [to a summary judgment motion] by submitting evidentiary materials of specific facts showing the presence of a genuine issue for trial." *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018) (quotation marks omitted). And neither the body camera footage nor the booking photograph taken shortly after his arrest establish major injuries. The minor nature of Jordan's injuries further supports the conclusion that Detective Watson never used force that was constitutionally excessive. Evidence of only minor injuries does not "necessarily foreclose[] a claim of excessive force," but the degree of injury is "certainly relevant insofar as it tends to show the amount and type of force used." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).

Jordan cannot overcome the first prong of the qualified immunity test, so his claim cannot proceed. But even if he were to prevail on that element, he still cannot satisfy the second prong: whether Detective Watson violated a right that was clearly established. Federal courts have frequently permitted officers to use force like Detective Watson did to make arrests, especially if the plaintiff was resisting arrest. *See, e.g., Ehlers v. City of Rapid City*, 846 F.3d 1002, 1012 (8th Cir. 2017) ("[O]fficers may use force to handcuff a suspect who is resisting, even if that force causes pain."); *Rimmer v. Sanchez,* No. C22-4058-LTS, 2025

6

WL 2677538, at *8 (N.D. Iowa Sept. 18, 2025) (recognizing that it was not clearly established that tackling a suspect onto a police vehicle and then onto the ground when he "had not complied with orders" was objectively unreasonable). Jordan's excessive force claim cannot pierce Detective Watson's qualified immunity defense. The Court must grant summary judgment for the officer.

## Conclusion

Detective Watson did not use excessive force to arrest Jordan. Police officers "undoubtedly" have a right to use force to effect an arrest. *Chambers*, 641 F.3d at 907. "[R]easonable applications of force may well cause pain or minor injuries with some frequency." *Id.* Detective Watson's conduct falls well within that permissible zone. Because he did not violate Jordan's Fourth Amendment rights, qualified immunity shields him from this suit. **IT IS HEREBY ORDERED** that Detective Watson's motion for summary judgment, ECF 37, is **GRANTED**. Detective Watson's motion to strike, ECF 42, is **DENIED AS MOOT**.

Dated this 29th day of January, 2026

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE

7